Good morning, Your Honors. May it please the Court, my name is Howard Davis. I'm representing the Petitioner, Mr. Nassar. Let me ask you something about this motion you filed. As I understand it, when you apply for an adjustment of status, if I understood the government quorum right, it takes around 3 years. So what you're asking for is that the case be stayed for perhaps 3 years while the motion is pending. Is that correct? NASSAR Well, I thought that if the matter could be taken care of on an adjustment of status, then it would not waste the Court's resources. ASHCROFT I appreciate that, but that didn't answer my question. Kagan Right. I know that. Kagan Wasn't this motion filed 3 years ago? NASSAR You know, I can't answer that. Kagan When was the motion filed? NASSAR It was filed a few days ago. Kagan No, I don't mean the motion. I mean the application for adjustment of status. When was that filed? NASSAR Oh. Kagan I thought it was 3 years ago. NASSAR Yes. It was, yeah, it was filed a couple of years ago. Roberts Oh, it was. Ginsburg What's the basis for the request for adjustment of status? NASSAR It was approved I-140 employment-based. Alito I'm sorry? NASSAR It was approved I-140 employment-based visa petition. Alito I don't understand. It's not marriage to an American citizen. NASSAR Correct. It is not. It is based on employment. Ginsburg It was approved by the BIA? NASSAR No, it was approved by the then Immigration and Nationalization Service. The normal route is, is that they would, they approve the, or they adjudicate the immigrant visa based on employment, and then he would file the application for adjustment of status. Now, since Mr. Nassar is in exclusion proceedings as opposed to deportation or removal proceedings, they had special rules with regard to that. The EOIR lacked jurisdiction on, in general, except for certain circumstances, on the application for adjustment of status. So everything has to be done with the district director. Roberts I have a question about something different. Nassar Oh, go ahead. Roberts It looks as though this fellow never did make out much of a case for asylum or withholding. It looks as though this fellow never did make out much of a case for asylum or withholding. However, country conditions keep changing. Afghanistan just keeps changing. Nassar Correct. Roberts And it's, he keeps filing applications or motions to reopen based on the changes, and the BIA's latest decision turns him down because of yet another change, throwing out the Taliban. I'm sympathetic to the argument that the BIA should have given him a chance to brief the case about whether throwing out the Taliban eliminates his problems. On the other hand, I can't figure out what his problems are, really. It's hard for me to figure out why he needs asylum. Nassar Well, all right. Okay. Now, with regards to asylum, now, and I'm going to try to ---- Roberts He doesn't seem to say anyone picked him out to persecute or that anyone picked out any group of which he's a member to persecute. He just says he's a more secular fellow and won't get along well there. Nassar Well, actually, the ---- this is the issue regarding the difference. The difference is between the two ---- there were two motions to reopen filed. One was filed in 1996, and in that particular one, the emphasis of the claim was westernized, I think, as pretty much not unlike what ---- as you just characterized it. And the ---- at that ---- and then the board dismissed or denied the motion there, and then a couple of years later, he files a second motion to reopen with a very different emphasis, and that has to do with his being Tajik, ethnic Tajik, and religiously Shia. And that was the focus of the second motion to reopen, and the board completely missed that. And I understand that there were aspects of the previous case, the original asylum case, when Afghanistan was under the communists that was kind of re-argued, but really there was a very needy part about the changes as it affected the petitioner that had gone on since the denial of the ---- since the filing of the first motion to reopen. And that is, as I said, based on his Tajik and Shia identities. And that is very, very much made clear in the asylum, in the new asylum application at the administrative record at page 36. Now, the Tajiks, as I understand it, they're one of the groups that threw out the Taliban. Taliban were push-tuned. The Tajiks and the push-tuned don't get along. Right. And Karzai's coalition is partly Tajik. Now ---- Is that right? Of course. But you never had a chance to argue that. Right. I mean, that's the thing, is that now the problem, of course, by the time we get to the motion to reconsider, which was denied, as an alternative reason for denying this, I mentioned, well, the Taliban has fallen anyway, so, you know, that's it. But the problem there is, is that the board took administrative notice of what this Court has defined as called, I mean, I guess an administrative law, legislative facts, and that's fine. But the problem is, is that they did not provide the opportunity for the Petitioner to deal with the adjudicative facts, that is, what is the effect of the changes on his individual situation. What about the other half of that? One half of their decision, it strikes me they got a real problem under Castillo-Viagra. That is that second part. Right. The other half of their decision says you never made out a case in the first place. But the thing is, is that they never even considered that case that was put together in the motion to reopen based on the Tajik and Shia identity in that. And then the decision denying the motion to reopen, it didn't even address that. They didn't address it. They did say that, more generally, that whatever information you have, you could have submitted earlier. And so the question is, could you have submitted it earlier? And the thing is, is that I would say the answer is no, because if you, if one looks at, I mean, you have the statement. Well, first of all, what was initially submitted in 1996, there were articles about, that focused on the Taliban taking over Kabul, the capitalists. The Taliban take over Kabul. Pardon me? When did the Taliban actually take over Kabul? I think in the, earlier in the 90s. But, but the, they really began to, it seems, come much more to the fore in the middle of the 90s. And the focus at that time, they were, they came into Kabul. And, and the focus of the articles had to do with, you know, the, the repressive practices in general. In the, in the expert statement he's writing in the year 3000 saying that within the past three years, that is going back into 97, there's been, there's been also a focus on targeting particular groups, among them the Tajiks. And then there's also country background reports, the Department of State, Embassy International, going from pages 61 and on of the administrative record, talking about the, that the Tajiks and Hazars and groups like that have been targeted. And these are things that came up pretty much after the filing of the first motion reopened. And I guess that this. So you couldn't have presented the evidence. I'm sorry? So you couldn't have presented the evidence at the first motion.  Correct. Because that arose in 1998, or thereabouts. Or, or 97, but after the. After the 1996 hearings. Yes. Yes. I'm going to save the last minute for any rebuttal. Thank you, counsel. May I please record? My name is Steve Flynn. I represent the respondent, the Attorney General in this case. First off, I'd like to point out that the Board made no factual or legal errors in denying the motion reconsidered. Let me ask you something about that. Yes, sir. The Board has this line in there, Moreover, we note that the Taliban regime is no longer in power in Afghanistan. As such, there's been a fundamental change of circumstances such that Respondent no longer has a well-founded fear. I wrote a decision about 12 years ago called Castillo-Villagra that the court has followed since, that says that when there's a change of regime that occurs and the BIA chooses to take notice of that regime, they have to give notice and an opportunity to be heard to the petitioner on how the change of regime may affect his asylum claim. Even though the change of regime itself is something of which notice can be taken without notice in a hearing, judicial notice or administrative notice, nevertheless, the effect of the change of regime requires notice in a hearing. And I don't understand why this fellow wouldn't get notice in a hearing on how ouster of the Taliban and installation of the Karzai regime might or might not affect his asylum claim. Well, once again, as you pointed out earlier, sir, there's two parts to the Board's decision. The first part says there was no error in our denial of the motion. The second part was almost, and at this point I'm just kind of speculating on behalf of the Board, because, as noted, the situation in Afghanistan has been in such constant flux that we have a petitioner constantly filing motions to reopening alleging new changes in the situation in Afghanistan. In fact the Board is alleging new changes, noting new changes. Noting new changes. And if you look at the denial of his first asylum claim back in 19 — the Board denied it back in October of 1994. In a footnote, they also noted that, hey, this guy at the time said, even though they said, yes, we agree with the adverse credibility, in a footnote they said, hey, by the way, he says he's mujahideen and he's going to be persecuted by the Soviets. We just note that the Soviets have been ousted by the mujahideen. So that was a footnote in the first thing. So I guess it's just kind of maybe — And like he could not have filed a timely motion to reopen because changes occurred subsequent to the allowed time period. I mean, you had the Soviets in there, and then you had more or less mujahideen anarchy, and then you had the Taliban, and now you have Karzai. But just focusing — so as far as the second portion of the Board, I think that was just noting there has been more changes. Perhaps preemptive of him filing another motion to reopen. I'm just saying, hey, if you're going to file another motion to reopen — We should just disregard it. In other words, it's not going to sustain anything, and either it rises and falls on the first — It rises or falls on the first one, yes, ma'am. But as far as background, I mean, that is — that is important to note that, yeah, there has been another change, and obviously — But if it mattered, we would have to remand. So it's really not worth arguing about. Okay. So what about the other piece? As far as the two motions to reopen, the second motion to reopen, the Taliban entered Afghanistan in 1994. They'd seized Kabul and 90 percent of the country by 1996. So the Taliban wasn't ascended at the time he'd filed his first motion to reopen. It was in power. It was in place. So — and he alleged that he — basically, his first motion to reopen, if I return to Afghanistan, I will be persecuted because of my Western views and my non-fundamentalist religious outlook. That's a quotation from his motion to reopen. In his second motion to reopen, he says, well, I'll be persecuted because of my ethnicity, Tajik, and my religion, Shiite. And he submitted documents, for example, one from July of 1997, which was after the first one was filed, from Amnesty International. Amnesty International has just received information that the Taliban had surrounded up as many — as 2,000 men from the Tajik and Hazara minorities from their homes in Kabul over the last few days. They were solely because of their identity as minority Tajik and Hazaras. And there was a whole — there were four or five other specific incidents referred to in various papers that were all after — dealt specifically with the minorities, religious or ethnic minorities, and that were after the last motion. So — But, ma'am, there was nothing different. He would face persecution for his Western views and his non-fundamentalist outlook no differently than he would face persecution based on his ethnicity or his — or his religion. So — What do you mean, no differently? Vis-a-vis. Vis-a-vis this petitioner, there was no change in country conditions. From the time that the Taliban came to power in 1996, they persecuted almost indiscriminately. Anyone that had a contrary view to their philosophy, be it Western views or Tajik ethnicity, he would face the same persecution if returned. So vis-a-vis this — Part of the problem at the first may not have been a protected class, but this is? No, ma'am. What I'm — Under the statute? What I'm saying, ma'am, is — put it this way. The alleged persecution — Is Western views a protected religion, political view, et cetera, under statute? No, ma'am, it's not. All right. Is Tajik minority or Shia Muslim? Is — A protected category? Membership — it could be, yes, ma'am. All right. Okay. So there was a difference. But then again, a Western view and whatnot could be interpreted as a — as a protected class. For example, I argued a case before you, ma'am, where that was the — Correct. That was the exact allegation, that because of my Western views, if I return, I'll be persecuted, and they sustained — And they ruled against you. Yes, ma'am. Right. But the BIA's view, apparently, is that it wasn't, right? So when they rejected him the first time, they rejected him on the ground that he wasn't — hadn't demonstrated anything that constituted persecution. Well, ma'am, but the first motion to reopen, like, that denial, that was never appealed, ma'am. So that's — I'm not talking about the first. I'm talking about the second. I'm talking about the first motion to reopen. Yes, I am. Okay. But the second motion to reopen, that's the only thing we can be concerned with, because he never appealed any of his prior work. I understand that. But I'm asking — you said they were both the same. And I'm asking, were they really both the same? There's no substantial change in country conditions vis-à-vis this petition. He alleged he would be persecuted in his first motion to reopen if returned to Afghanistan because of a contrary view and status. He alleged in his second motion to reopen that he'd be persecuted by a Taliban based on his views and status that would be viewed as contrary. I mean, he's now changing. He presented evidence that was from post-'96 as to his second claim. Now, I suppose if you had come back with evidence showing that he could have shown the same thing in — the same new thing in-'96, but he never did that. Well, he — that's the thing. His ethnicity never changed. His religion hasn't changed. This wasn't new. But the circumstances that the Taliban were focusing on, that kind of discrimination may have changed. The only evidence he submitted is from later. And you don't have anything in there to show that it was going on earlier. Well, ma'am, if you look at the country reports and the information, they track the Taliban's abuses all the way back to when they first came into power in 1996. There were abuses, but were they the same abuses? Yes, ma'am. I mean, they were — adulterers were stoned to death. Homosexuals were crushed under walls. Women were beaten for a modest — But this guy is not a homosexual or an adulterer woman. But that's what I'm saying, sir, is that the Taliban persecuted anyone that they viewed as contrary. It was almost indiscriminate. So — What I'm thinking is the secular views was really a weak claim because how do they know he's got secular views? If he has any sense, he'll just keep his mouth shut and behave himself and dress like he has religious views. The whole Middle East, you can tell people's religious opinions by their hats. Just wear the right hat. Look religious. He'll get away with it. They don't know his private views. But then Tajik, that's harder to keep secret. Once they start going after the Tajiks. And I understand the point the Court is making. What I'm focusing on here, though, is the change that there was — it wasn't that the Taliban started persecuting Tajiks and — That's what we don't know. The only evidence we have of persecution against Tajiks is from post-'97, and you haven't shown anything from before then. Well, the evidence — So you can, when the thing goes back and it's reopened, prove that. But, I mean, you being the INS. But as a prima facie case, it seems to me it's here. Well, his first — his first allegation was that he would be persecuted by the Taliban due to his contrary views. Can I just change the subject for a minute? Yes, ma'am. What about the adjustment of status issue? Where is that? At this point, he has an approved visa petition. What now has to happen is he has to actually get a visa, and then he has to apply with the CI — Customs and Immigration Service district director to adjust stats. Is it a foregone conclusion that he's going to get his adjustment of status so that we're wasting his time deciding anything about his asylum? No, sir, it's not a foregone conclusion. I can't speak to the merits of his application. It's not a thing where once he has his approved visa, it's just paperwork and he's going to get the adjustment of status? Not necessarily. There's a number of variables. It's employment. It's contingent on him keeping his job. As far as the nuances, I honestly don't know. But, obviously, we'd be opposed to having this case languish in abeyance limbo until some uncertain date in the future when the district director rules upon. Do you have any idea when that date will be? No idea, sir. Counsel, I have a question for you. It's slightly different. And you may have responded to this question the last time you were here, but I'm just wondering, because there's been greater and greater news reports. Time magazine just had an article about the reemergence of the Taliban, even though the United States is there. Is the INS changing its position on any — on the situation, on how it views the situation in Afghanistan? Not that I'm aware of, ma'am. Not that I'm aware of. Okay. Thank you, Counsel. Thank you. Counsel? Your Honors, I'm missing. Thank you, Counsel. Thank you. Nassar v. Ashcroft is submitted. United — I choked my stack. Next is United States v. Chavez. Thank you.
judges: Kleinfeld, Wardlaw, Berzon